978 F.2d 1257
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
WESTMORELAND COAL Company, Incorporated, Petitioner,
v.
Kyle B. POWERS; Director, Office of Workers' Compensation
Programs, United States Department of Labor, Respondents.
 No. 91-1085.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 31, 1991
Decided: October 27, 1992
 
 On Petition for Review of an Order of the Benefits Review Board. (88-1359-BLA)
 Petition for review denied by unpublished per curiam opinion.
 ARGUED: Douglas Allen Smoot, JACKSON & KELLY, Charleston, West Virginia, for Petitioner.
 Richard Allen Frye, Abingdon, Virginia, for Respondents.
 ON BRIEF: Michael J. Denney, Marta Kusic, Office of the Solicitor, United States Department of Labor, Washington, D.C., for Respondent Director.
 Ben. Rev. Bd.
 
 
 1
 Petition Denied.
 
 
 2
 Before WIDENER and HAMILTON, Circuit Judges, and RESTANI, Judge, United States Court of International Trade, sitting by designation.
 
 PER CURIAM:
 OPINION
 
 3
 This case arises under the Black Lung Benefits Act, 30 U.S.C. § 901 et seq. An Administrative Law Judge (ALJ) granted benefits to Kyle B. Powers, after a hearing held on January 11, 1988. The Benefits Review Board (Board) affirmed. Westmoreland Coal Company petitions for review of the Board's decision. Because we are of opinion the Board was within the scope of its review authority when it found the ALJ based his opinion on substantial evidence, we deny the petition for review.
 
 
 4
 The standards of review here are governed by statute and regulation, specifically 33 U.S.C. § 921(b)(3), which is incorporated by reference into the Black Lung Act by 30 U.S.C. § 932, and repeated in the regulations at 20 C.F.R. § 802.301. See Zbosnik v. Badger Coal Co., 759 F.2d 1187, 1189 (4th Cir. 1985). The Board is bound by an ALJ's findings of fact if they are supported by substantial evidence in the record considered as a whole. Wilson v. Benefits Review Bd., 748 F.2d 198, 199-200 (4th Cir. 1984). We review the Board's decision to determine whether the Board committed an error of law and whether the Board adhered to its scope of review. Kowalchick v. Director, OWCP, 893 F.2d 615, 619 (3d Cir. 1990).
 
 
 5
 To qualify for Black Lung benefits, it must be established that the miner is "totally disabled due to pneumoconiosis." 20 C.F.R. § 718.204(a). The ALJ in this case found that there was "some persuasive evidence of total disability" under 20 C.F.R. § 718.204(c)(2) because one of three blood-gas studies produced qualifying values. However, the ALJ did not rely on (c)(2) alone to establish disability, but instead went on to find total disability unders 718.204(c)(4). Section 718.204(c)(4) provides in relevant part:
 
 
 6
 total disability may [ ] be found if a physician exercising rea6350 55 5 soned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents ... the miner from engaging in employment as described in paragraph (b) of this section.
 
 
 7
 20 C.F.R. § 718.204(c)(4). Paragraph (b) of that section states that to be considered disabled, the miner must be prevented from performing his or her "usual coal mine work." 20 C.F.R.s 718.204(b)(1).
 
 
 8
 To find "total disability" of Powers in this case, the ALJ was required to make "findings of fact and conclusions of law, with reasons therefor, upon each material issue of fact or law presented on the record." 29 C.F.R. § 18.57(b); 5 U.S.C.s 557(c)(3)(A); Stapleton v. Westmoreland Coal Co., 785 F.2d 424, 462 (4th Cir. 1986) (holding 5 U.S.C. § 557 applicable in Black Lung case), rev'd on other grounds sub nom. Mullins Coal Co. v. Director, OWCP, 484 U.S. 135 (1987). Westmoreland argues that the ALJ failed to make the proper findings in his opinion. Specifically it argues that there was not enough evidence in the record of Powers' exertion in his "usual coal mine work" for the ALJ to have determined Powers was totally disabled.
 
 
 9
 We first look to the ALJ's findings with regard to total disability under subsection § 718.204(c)(4):
 
 
 10
 Drs. Buddington, Smiddy, and Paranthaman concluded that Claimant has pneumoconiosis, while Dr. Dahhan stated that Claimant did not have pneumoconiosis.
 
 
 11
 This Court finds Dr. Buddington's report to be both welldocumented and well-reasoned, and substantiated by objective evidence. Dr. Smiddy's report is similarly persuasive. Both of these reports refer to Claimant's September 18, 1985 blood gas study, which was qualifying for establishing total disability.
 
 
 12
 Dr. Buddington concluded unequivocally that Claimant was unable to perform his usual coal mining employment, while Dr. Smiddy stated that Claimant is not capable of per forming the type of physical activity required for underground coal mine employment.
 
 
 13
 ...
 
 
 14
 This Court finds probative evidence of total disability has been presented under Section 718.204.
 
 
 15
 After weighing all the probative evidence in this case, this Court finds that Claimant has established that he is totally disabled due to pneumoconiosis under the provisions of the Act. In reaching this conclusion[ ], this Court notes Claimant's credible testimony at the hearing, in addition to his qualifying blood gas study and well-reasoned and persuasive physicians' reports.
 
 
 16
 Total disability due to pneumoconiosis has been established under Section 718.204.
 
 
 17
 We recognize the ALJ's opinion could be more artfully phrased. Our inquiry, however, does not end there. The Board, notwithstanding the ALJ's lack of specificity, affirmed the ALJ after finding substantial evidence in the record as a whole that Powers was totally disabled. Thus, we must consider whether the Board's decision affirming the ALJ should be affirmed by us even though the ALJ's opinion may have lacked a certain specificity.
 
 
 18
 We are guided by the statutory and regulatory provisions governing the Board's review of the ALJ, 33 U.S.C. § 921(b)(3) and 20 C.F.R. § 802.301(a) respectively. Section 921(b)(3) provides in relevant part: "The Board's orders shall be based on the hearing record. The findings of fact in the decision under review by the Board shall be conclusive if supported by substantial evidence in the record as a whole." 20 C.F.R. § 802.301(a) provides:
 
 
 19
 The Board is authorized to review the findings of fact and conclusions of law on which the decision or order appealed from was based. Such findings of fact and conclusions of law may be set aside only if they are not, in the judgment of the Board, supported by substantial evidence in the record as a whole or in accordance with law.
 
 
 20
 Next, we look to the Board's opinion in this case, which states in relevant part:
 
 
 21
 We also affirm the administrative law judge's finding that claimant established total disability due to pneumoconiosis. Contrary to employer's contention, the record reflects that extensive testimony was presented at the hearing on the subject of claimant's last coal mine employment with employer including questioning of claimant by the administrative law judge. Thus, the administrative law judge had a proper basis for comparing the exertional requirements of claimant's coal mine employment with the medical evidence. [Citation to the reports of Drs. Buddington and Smiddy.] The administrative law judge's determination that the reports of Drs. Buddington and Smiddy as well as the qualifying blood gas study and claimant's credible testimony outweighed the contrary probative evidence and therefore established total disability, is supported by substantial evidence and within the administrative law judge's discretion.
 
 
 22
 As noted, our review of the Board's decision is to determine whether the Board committed an error of law and whether the Board adhered to its scope of review. Kowalchick, 893 F.2d 615, 619.
 
 
 23
 We are of opinion that the Board did not exceed its review authority when it found "substantial evidence" existed that Powers was totally disabled under § 718.204. There was ample evidence in the record for the ALJ to have determined Powers' exertional requirements for his "usual coal mine work" and find him totally disabled. The ALJ based his decision on the "credible testimony" of Powers relating to his "usual coal mine work" throughout his years at Westmoreland Coal. Powers testified extensively to his career at Westmoreland Coal, from his first job in the mines to his last job as a shop foreman. As for exertion, Powers testified that he could not even go squirrel hunting anymore.
 
 
 24
 From 1970 to 1972, Powers was a general mine foreman, where he testified his duties were underground "to go inside and make sure everything was carried out like it was supposed to be."[1] Powers' next job was mine manager, where he was in charge of the whole mine, though still required to work underground about six hours a day. He retained his job as mine manager until 1980, when, on account of his health, Westmoreland Coal transferred Powers to an outside job as a shop foreman on a construction crew. Powers had been diagnosed as having pneumoconiosis as early as 1971. Though Powers testified that his official duties as a shop foreman were primarily supervisory, the evidence showed that Powers continued to do heavy work. He testified that "the Union wouldn't let me do anything else, but I always tried to help my men." He also testified that the Union "took me up on a few grievance[s] because I was still helping."
 
 
 25
 Westmoreland's position on appeal only reflects consideration of Powers' most recent job as a surface shop foreman.[2] Its argument centers around the conclusion that Powers' surface job, being his last coal mining work, is the only job to be considered in a determination of Powers' "usual coal mine work." The argument goes that Dr. Smiddy's report referring to Powers incapacity for the"type of physical activity required for underground coal mine employment" was insufficient to find disability because it did not refer to Powers' incapacity for the surface work his last job required. We are of opinion, however, that the ALJ properly relied on Dr. Smiddy's report because the question of total disability in this case depends on more than just Powers' most recent job as a surface shop foreman, but also includes consideration at the least of his last job underground.
 
 
 26
 Though we have stated that "usual coal mine work" relates to "the coal mine work that the involved black lung claimant was performing at the time of his disability," Walker v. Director, OWCP, 927 F.2d 181, 183 (4th Cir. 1991), this does not preclude consideration of a reassignment to a less strenuous job as a factor in the determination of a claimant's total disability. Powers testified that he had been given his most recent mining job as a surface construction foreman in order to remove him from a more strenuous and dusty underground job.[3] This transfer is relevant to a disability analysis because § 718.204 includes provisions that provide that current employment in a coal mine "shall not be conclusive evidence that the miner is not totally disabled" when the miner has been "transfer[red] by request or assignment to less vigorous duties or to duties in a less dusty part of the mine." 20 C.F.R. § 718.204(e)(2) & (3)(iii). Powers' transfer due to health allowed the ALJ to look not only at his most recent surface coal mine work, but also to his work as an underground mine foreman. Both his above and below ground jobs were relevant to determine Powers' exertional requirements under § 718.204(b)(1).[4]
 
 
 27
 Considering Powers' work before and after he was transferred, we are of opinion that substantial evidence exists in the record of Powers' exertional requirements for the ALJ to have found him totally disabled. Though we agree that the opinion written by the ALJ lacked some specificity, we are of opinion that the Board's subsequent decision cured it of any infirmities. The Board properly reviewed the record and expressly found that the ALJ's opinion was based on the requisite "substantial evidence." The Board considered all of Powers' testimony, combined with the medical evidence relating to Powers' usual coal mine work, the medical evidence as to Powers' condition, and the weight of any contradictory evidence, and concluded, taking the evidence as a whole, "[s]ince claimant has established all elements of entitlement under Part 718, he is entitled to benefits."
 
 
 28
 We find Westmoreland Coal's other arguments without merit. Because we find the Board was within the scope of its review authority when it found substantial evidence of the Powers' total disability, we accordingly deny Westmoreland Coal's petition for review.
 
 PETITION FOR REVIEW DENIED
 
 
 [1]
 We note that the strength requirements for an underground mine foreman, Powers' closest analogous job description, are labeled "M" (medium) in the Department of Labor's own Dictionary of Occupational Titles 957 (939.137-018 OCCUPATIONS IN EXTRACTION OF MINERALS-SECTION SUPERVISOR (mine & quarry)) (4th Ed. rev. 1991). Medium Work is defined as:
 Exerting 20 to 50 pounds of force occasionally, and/or 10 to 25 pounds of force constantly to move objects. Physical demand requirements are in excess of those for light work.
 Dictionary of Occupational Titles at 1013.
 
 
 [2]
 Westmoreland took the same tack at Powers' hearing. It has argued throughout that the sole inquiry is to look at Powers' last job as a surface shop foreman to define "usual coal mine work" under the regulations
 
 
 [3]
 Powers was the underground mine manager when he was transferred in 1980. We note that medical reports in the record reflect that there was evidence Powers had pneumoconiosis as early as 1971. Essentially, Westmoreland Coal is arguing that while Powers may have been able to receive benefits if he had retired directly after working underground, because he was transferred to the surface to a less strenuous and dusty job, he is not entitled to benefits now. This, however, runs against the letter and spirit of the regulations and legislation relevant to this case
 
 
 [4]
 When both Powers' above and below ground work is considered, Dr. Smiddy's reference to Powers' incapacity for underground work goes straight to the heart of the disability issue